JACKSON COUNTY v. WORTH.

[90 South. 588.   No. 22390.]

1. PUBLIC LANDS.  *Oil lease without provision for annual rent held void as in violation of statute.*

Chapter 351, Laws 1918, providing for the leasing of sixteenth section school lands, requires the payment of annual rent, and also limits the power of the board of supervisors to leasing lands not already leased, and where the board undertook to lease such lands for a consideration of one dollar and one-eighth of the oil and gas produced for a period of fifteen years, with no provision for annual rent, and where there was no outstanding lease for agricultural purposes, the order of the board leasing such lands under chapter 351, Laws 1918, was void.

2. PUBLIC LANDS  *Statutes.  Statutes in pari materia considered and intent deduced from them considered as a whole; statutes held to prohibit lease of school lands for longer than one year without consent of inhabitants.*

In construing statutes all statutes *in pari materia* are taken into consideration, and the legislative intent deduced from them considered as a whole.  Acts 1918, chapter 351, when considered thus with section 4711, Code of 1906 (section 7522, Hemingway's Code), providing for the obtaining of the consent of the inhabitants of the township before leasing sixteenth section school lands, and that no lease for a longer term than one year can be made unless such consent is obtained, a lease for fifteen years cannot be made unless the consent of the inhabitants of the township is obtained in the manner required by law.  There is no conflict or inconsistency between chapter 351, Laws of 1918, and section 4711 of the Code of 1906, and the latter act does not amend, modify, or repeal the Code section herein referred to.

3. CONSTITUTIONAL LAW:  *Constitutionality of statute will not be decided where the contract made under its provisions is void for noncompliance with its terms.*

Where the constitutionality of a statute is sought to be tested in a suit, the court will not decide such question unless necessary to a disposition of the case; and where a contract made under the provisions of the statute is void because of noncompliance with the terms of the statute, the constitutionality of the statute will not be decided.

4. PUBLIC LANDS.  *Chancery court may have an account stated as to illegal lease of school funds.*

Where the board of supervisors makes an illegal lease of sixteenth section school lands, the chancery court, under section 4716, Code of 1906 (section 7527, Hemingway's Code), may have an account stated, and should refund to the lessee any money or property paid for the lease over and above the rents, issues, and profits of the lease.

APPEAL from chancery court of Jackson county.

HON. V. A. GRIFFITH, Chancellor.

Bill by George W. Worth against Jackson County. Judgment for the plaintiff, and the defendant appeals. Affirmed and remanded.

*Denny & Heidelberg,* for appellant.

As a general rule, all contracts or agreements which involve, or have for their object, a violation of the law are illegal. It is immaterial, as far as the legality is concerned, whether the agreement is forbidden by the common law, or whether by statute, or, generally speaking, whether the thing forbidden is *malum in se,* or merely *malum prohibitum.* No principle of law is better settled than that a party to an illegal contract cannot come into a court of equity, or law, and ask to have his illegal projects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. The law will not aid either party to an illegal agreement. It leaves the parties where it finds them. *Daniels* v. *Tearney,* 120 U. S. 420, 26 L. Ed. 187.

The general rule is the same both at law and in equity and whether the contract is executory or executed, the object of the rule refusing relief to either party where the contract is executed, is not to give validity to the transaction, but to deprive the parties of all right to have either enforcement or relief from the illegal agreement. In such cases the defense of illegality prevails, not as a protection to the defendant, but as a disability of complainant. The court does not give effect to the contract, but merely refuses its aid to undo what the parties have already done.

*Lowenberg* v. *Klien,* 87 So. 653; *Mitchell* v. *Campbell,* 111 Miss. 806, 72 So. 231; *Belton* v. *Williams,* 109 Miss. 74, 67 So. 849; *Woodson* v. *Hopkins,* 85 Miss. 171, 37 So. 1000; *McWilliams* v. *Phillips,* 51 Miss. 196; *Dean* v. *McLendon,* 30 Miss. 343; *Hoover* v. *Pierce,* 26 Miss. 227; *Wooten* v. *Miller,* 15 Miss. 380; *Walton* v. *Dustin,* 49 Miss. 569.

Under these authorities, appellant submits that, if the charge in the bill that the agreement here under consideration is illegal be true, then this court will not give the relief prayed for, inasmuch as the two parties are in *pari delicto,* regardless of appellee's proclaimed innocence and ignorance of the law governing the subject-matter of the agreement; and, consequently, the second ground of demurrer is well taken.

Appellee, by his bill, challenges the authority of appellant, through its board of supervisors, to grant the oil and gas rights and privileges as undertaken. Appellant submits that the board of supervisors had ample authority therefor, independent of chapter 351, of the Laws of Mississippi, of 1918. Without going into the history of the donation by the state of Georgia of sixteenth section lands, to the United States, in trust, for educational purposes, and the transfer of that trust to the state of Mississippi by act of Congress, which is interesting and familiar history, we assert that the legislature acting under the provisions of chapter 129 of the Code of 1906 and acts amendatory thereof, conferred on the boards of supervisors full jurisdiction and control of sixteenth sections and delegated to such boards the active administration of the trust which was reposed in the state affecting sixteenth sections and neither the courts nor the law department of the state have any jurisdiction, power or authority to supervise or control the boards in the matter of the administration of the trust, nor to fix or direct the mode, manner or terms upon which the oil or gas rights and privileges upon and from such section should be sold.

Court will not interfere with boards of supervisors in the lawful exercise of jurisdiction committed to them by

law on the ground that their actions are characterized by lack of wisdom or sound discretion. *Monroe County* v. *Strong,* 78 Miss. 570; *Rotenbery* v. *Board of Supervisors,* 67 Miss. 471; *Jefferson Davis County* v. *James Sumrall Lumber Co.,* 94 Miss. 530, 49 So. 611.

If the county has all power necessary to carry out the purpose of the grant by jurisdiction and control, as declared in the last above cited case, the question of what was the purpose of the grant has been by this court fully answered in *Dantzler Lbr. Co.* v. *The State,* 97 Miss. 455, from which we quote: "While it is plain that it is the purpose of the Constitution to forever retain the title to these lands in the trustees for the use and benefit of the schools, it is also plain that the section contemplated that these lands should be made revenue bearing, so as to be a benefit to the schools."

In *Moss Point Lumber Co.* v. *Harrison County,* 89 Miss. 448, 42 So. 290, it is held that a lessee of school lands is conclusively presumed, in the absence of stipulations in the lease to the contrary, to have taken the lease for agricultural purposes and not to have any right to cut the timber therefrom.

And in *Dantzler case, supra,* it is held that under the section of the Constitution and of the Code authorizing county supervisors to sell the timber on such lands the board of supervisors may permit the purchaser of the timber to enter the land and remove the timber, and to burden the land with the support thereof until removed, and the word "lands in the Constitution and laws prohibiting the sale of school lands includes the soil only and not the timber growing thereon, nor other products found there in its natural state.

In *State* v. *Blodgett,* 110 Miss. 768, 70 So. 710, it is held that a board of supervisors has full power, in the exercise of its discretion, to sell timber on sixteenth sections lands to the lessee of the land or any one else.

In addition to the power of the board of supervisors to sell the product in its natural state found on such lands,

the legislature of 1918 enacted a law authorizing and empowering the board of supervisors of Jackson county to lease for oil and gas purposes sixteenth sections lands and to provide how funds arising therefrom shall be expended.

The act of the legislature, sections 5, 6 and 7, as embodied in chapter 351, of the Laws of 1918, is not of such nature or character as to come within the constitutional prohibition against the enactment of local, private or special laws, and particularly subdivision (P) and subdivision (U) of section 90, article 4, of the state Constitution.

There is no statute requiring the consent of the inhabitants of the township as a prerequisite to a valid sale or grant of oil and gas privileges on sixteenth sections and in the absence of such statute the lease or grant is valid without the assent of the inhabitants of the township. *Jones* v. *Madison County,* 72 Miss. 777, 18 So. 87.

We submit that the board of supervisors were fully authorized to pursue any course or adopt any method of selling the oil or gas and all other products in their natural state from the sixteenth section as it may have seen fit so long as the statute does not provide to the contrary.

The board, under its supervision and control of sixteenth section lands given it by the legislature, is not limited in authority to dispose of such product, but is merely limited in the matter of leasing the land itself or rather, a method of so leasing the land is prescribed, which the board is required to observe.

That there is no equity on the face of the bill is manifest. The bill clearly shows negligence, on the part of the appellee in entering into the transaction without examining the state of the title to the land, and without ascertaining the extent of the authority of the board to enter into such contract, consequently appellee, assumed the risks. The transaction was speculative, and if not profitable, the fund that he voluntarily and deliberately deposited as a forfeit should not be taken from the fund in which it has been placed and restored to him. Such would be a premium on his negligence and would open an avenue for

all persons to breach contracts and avoid their just penalties therefor.

Appellant therefore confidently urges a reversal of the decree of the chancery court.

*W. M. Denny, Jr.,* for appellee.

The contention of appellant as to the unlawfulness of the contract and the consequent alleged inability of appellee to recover herein is wholly and entirely without merit. Boring and drilling for gas and oil is not, either *malum in se* or *malum prohibition,* in violation of law. The contract involved here is not one to do a thing unlawful or against public policy. The principle that the parties will continue where the court found them applies only when the contract is to do a thing unlawful, in other words to violate the law and has no application where a party accomplishes a contract in an illegal manner. Matters *malum in se* or *malum prohibitum* are illegal but illegal conduct in the effort to accomplish the doing of a lawful thing is neither *malum in se* nor *malum prohibitum* in the sense that the party injured thereby cannot recover because of the wrong sustained. The authorities mentioned in brief for appellant concerned contracts for the doing of things unlawful and did not contemplate contracts for a lawful thing but where one party thereto acted in an illegal manner and therefore such authorities do not apply in this case.

The appellee is not in *pari delicto* and should not be burdened because of the failure of the board of appellant to observe the law in the matter under consideration.

The case of *Cole* v. *Harmon,* 8 S. & M. 562, referred to in brief of appellant, held, as stated in the syllabus, "that the defendants could not, under the state of the pleadings, question the character in which the plaintiff sued, nor whether he had properly qualified to act in his fiduciary capacity, and that the evidence offered, was, therefore, properly excluded."

The contention in appellant's brief that the chancery court is without power in view of the allegations of the bill and the jurisdiction conferred on the board of supervisors to grant the relief prayed is contrary to the rights conferred on appellee by section 7527 of Hemingway's Code hereinabove referred to. If the force and effect of an existing statute conferring rights upon persons under certain conditions is to be given weight here then there is nothing that appellant can urge in contravention of such right and the relief prayed in the amended bill in this cause is directed and positively provided in section 7527 of Hemingway's Code.

This court has many times decided that the state holds the title to the sixteenth section funds as trustee for the schools. That the trust may be performed more conveniently, the state, through its proper tribunal, has made the board of supervisors its agent and in doing so has conferred certain powers and expressed the mode of performing such powers. The amended bill sets a total departure from the directions of the trustee, and in so doing accomplished a vain and void act. The board, except as agent for the trustee, has no jurisdiction whatever as to sixteenth sections and as agent has no discretion except in compliance with the statutory law touching such matter and the statement that the court would not entertain this suit because the matter complained of is entirely within the jurisdiction of said board is far wide of the real situation. The Constitution and law conferred powers concerning the location of the courthouse, when the place is properly determined, to the discretion of the board and it is quite obvious that a court would not interfere with the exercise of such exclusive power. The board has jurisdiction, as principal, as to courthouses while it is but agent with respect to the sixteenth sections.

The sale of timber, when we remember that the lease for agricultural purposes merely vested the lessee with the right to use such timber for husbandry purposes alone and the further fact that the sixteenth sections in this state,

and especially the greater part thereof, were and are valuable chiefly for the timber thereon, required that special authority be given for the sale of the timber as separate from the leasehold. One who leases the sixteenth section for agricultural purposes has no right to bore and drill for oil and to own the gas and oil found when he held under agricultural lease, no more that the one who had leased and owned the timber for all purposes, and we submit that statutory authority to lease for oil and gas was and is necessary.

The case of *Dantzler Lumber Co.* v. *The State,* 97 Miss. 455, 53 So. 1, referred to in the brief for appellant, held that the word, "lands" in the Constitution and laws prohibiting the sale of school lands includes the soil only and not the timber growing thereon, nor other product found there in its natural state. Authority by statute was regarded as necessary before the board of supervisors could be regarded as empowered to sell the timber growing on sixteenth sections. In the case of *Fernwood Lumber Co.* v. *Rowley,* 110 Miss. 821, 71 So. 3, hereinabove referred to, this court held that the sale of timber on a sixteenth section to which there was an oustanding agricultural lease, when such lessee was not the purchaser of said timber, was and is void, the theory and principal of law involved therein being that the lessee for agricultural rights has priority over subsequent leases or contracts that may be entered into by the board of supervisors, including the right to the timber thereon, and there is nothing in the law authorizing the leasing of sixteenth sections, as a general thing, for oil and gas purposes other than the Act of 1918 and such applies exclusively to Jackson county.

We will now devote our time and attention to the matters involved in the amended bill of complaint and urge upon the court that the matters of fact alleged therein demonstrate beyond question the invalidity of the lease granted applied and the right of appellee to the relief prayed in said amended bill.

The court, as a matter of general knowledge, will bear in mind that one who uses land for the purpose of boring and drilling for oil and gas requires the land more thoroughly and to a much greater extent than one who has the right of ingress and egress for the purpose of cutting and removing the timber. The use of the land for oil purposes, when one has the right to bore or drill into any part of a whole section, requires the entire section and such cannot be had when there are outstanding prior leases as in this case.

First we find in section 7517, Hemingway's Code, section 4760, Code of 1906, that the superintendent of education of each county, with the approval of the board of supervisors and upon consent being obtained as provided by the Code to lease the sixteenth sections lands subject to lease and not located in a city.

From a perusal of section 7517 referred to, the court will find that the law authorizes no one but the superintendent of each county to execute leases to sixteenth sections lands and then only when consented to by the inhabitants of the township where the section to be leased is located, and the consent of the board of supervisors has been secured, both requirements being conditions precedent to vesting the superintendent of education with authority. Lands are referred to in the statute and nothing but land was contemplated in the lease involved in the case at bar.

Section 7510, Hemingway's Code, section 4700, Code of 1906, provides that none of the sixteenth sections lands in the state shall ever be sold but directs that same be leased, those not in a municipality, for a term not longer than fifteen years on condition of the payments annually of the rent reserved. This section is in entire accord with the provisions of section 211, article 8, of the Constitution which expressly provides that a lease of sixteenth sections lands for a period of longer than ten years, may be provided by the legislature and requires the payment, in such case, of a ground rental annually. The lease pur-

ported to have been made by the board of supervisors for a period of fifteen years and under consideration here directly and openly violated the statute and Constitution referred to in that no ground rental is required to be paid annually. The appellee is granted the entire section for fifteen years for a paltry one dollar if he had his derrick on the land erected, or there in material, within four months after the date of the lease, and might never be called upon to pay anything additional in the way of rental unless he found oil or gas. He had the right to bore that section entirely full of deep holes, whereby its uses for agricultural purposes would doubtless be greatly impaired, and if his quest, which at most would be as uncertain as anything within the knowledge of man, was unsuccessful then that sixteenth section would yield ,no revenue whatever during that fifteen years period.

Section 7522, Hemingway's Code, section 4711, Code of 1906, provide the method for obtaining the consent of the inhabitants when it is proposed to lease any sixteenth section or part thereof and in this case the appellee did not, by any means whatever, prevent the board of supervisors, in considering his offer to lease as alleged in the bill, from adopting the ·means provided by this section for ascertaining the desires of the inhabitants of Township 5 south, Range 5 west, as to the leasnig of such section. The offer of appellee was for a valid, lawful lease and not one that is void and it would be monstrous indeed to hold him estopped by the void instrument under consideration here when the wrong doing was by appellants solely.

Referring to the failure of the board of supervisors, in granting the lease under consideration, to comply with the statutes referred to above we wish to call the court's attention to the cases of *Pressly* v. *Ellis,* 48 Miss. 574, and *Lauderdale County* v. *East Mississippi Mills,* 16 So. 210. In the case of *Pressly* v. *Ellis, supra,* where a conveyance of the sixteenth section to Ellis had been granted by the trustees involved when the law prohibited same and the court held the conveyance void, the court, in passing upon

the case, held that it is no less a rule of law than the suggestion of natural justice, that an agent or trustee, holding a confidential relation to his principal or beneficiary, whether deriving his relation under the law or by an appointment of an individual, should conduct the business intrusted to him with fidelity, to the interest of him or those for whom he acts; but also that he shall follow the line of duty prescribed for him. "If the appointing power has defined rules to govern his acts he has no discretion."

The leasing of sixteenth sections lands is directed to be done and accomplished in a certain manner and under certain defined conditions and I have no hesitancy in asserting that a departure therefrom only amounts to a nullity. Had appellee drilled as the paper purporting to grant him that right provides and had been successful in such effort can it be said that he would have reaped the fruits of his labor? It is possible that he could have insisted upon receiving the cost of the drilling but would not have been allowed to secure the profit. He had no valid lease to the section and therefore had no right as owner to whatever benefit might result from drilling into the land for the purpose mentioned in said void lease.

The case of *Board of Supervisors of Lauderdale County v. East Mississippi Mills Co., et al.,* 16 So. Rep. 210, not officially reported holds (1) "Act of Congress, approved May 19, 1852 (10 Stat., p. 6), which allows the legislature of Mississippi to convey or lease school lands, provided that they shall in no case be sold or leased without the consent of the inhabitants thereof, to be obtained as the legislature may direct, contemplates that the affirmative consent of the inhabitants shall be obtained; and a sale or lease of school lands under act Feb. 25, 1854, providing that the assent of the inhabitants shall be presumed if no petition showing their dissent is presented to the school commissioners after the advertisement of the lands for sale or lease, conveys no title; and (2) purchasers of school lands sold under act, Feb. 25, 1854, without the affirmative consent of the inhabitants, as required by Act

of Congress, approved May 19, 1852, cannot set up the statute of limitations as a defense to an action by the county supervisors, to quiet title."

The amended bill in the case at bar alleges, and the demurrer admits, that the alleged lease granted appellee was wholly without the consent of the inhabitants whose consent was necessary, wherefore the appellant board was entirely without power to grant the lease and it seems to me that the contentions made in behalf of appellant in the case at bar are entirely without merit.

In the case of *Hewes, etc.* v. *Langrofe,* 105 Miss. 375, 62 So. Rep. 358, when considering the constitutionality of Laws of 1912, chapter 288, authorizing the school board of Harrison county to establish a separate school district in that county, it being admitted that such act was a local law but denied that same violated section 90 of the Constitution and urged that section 87 of the Constitution authorizes the enactment of special or local laws where the same would be more applicable and more advantageous than a general law, the court said: "Stated differently the argument is that, where general laws are not applicable or advantageous, then the legislature may remedy the situation by a local or special statute." With this premise, it is urged that the territory in Harrison county described by chapter 288 of the Laws of 1912 stands in a class by itself, and that the general law in reference to the establishment of special school districts cannot be fitted to that territory, and that chapter 288, of the Laws of 1912 provides the only means by which this local situation can be taken care of. It is evident to our minds that the makers of the Constitution, by section 90 thereof, anticipated an answer to this argument.

It is alleged in the amended bill and, if same be regarded as properly pleaded and I submit that it is, admitted by the demurrer, that chapter 351, of Laws of 1918, openly violates sections, 87, 88 and 90 of the Constitution and in support thereof I point to the fact that such act of the legislature, by its terms, does not apply to any county but

Jackson county, the act providing, that the board of supervisors of Jackson county may lease, etc., while every other county in the state has sixteenth sections held in the same identical manner as are those of Jackson county and every other county in the state is, as far as we are informed and know, just as right and fortunate as to the presence of oil and gas within its sixteenth sections as is Jackson county and besides the one purpose of holding and leasing the sixteenth sections throughout the state is for the benefit of the common schools and such is clearly and positively within the meaning of the Constitution prohibiting local or special laws.

This court in the case of *State Board* v. *Pridgen,* 106 Miss. 219, 63 So. Rep. 416, held to the same effect as stated concerning case last quoted from. In fact the Constitution is so plain and unambiguous that a departure therefrom cannot be had without challenge and ready destruction by the courts of the state.

But if the court should hold that chapter 351 of the Laws of 1918, does not violate the Constitution as alleged in the amended bill, we are then confronted with the fact that such permits the leasing of sixteenth sections in Jackson county only when there are no outstanding leases thereto. The power purported to be conferred upon the board of supervisors of Jackson county does not vest when the sixteenth sections proposed to be leased for gas and oil have existing leases outstanding and it is alleged in the amended bill that, prior to and at the time of the execution of the said pretended lease to appellee there were outstanding leases for the whole sixteenth section and while such leases were agricultural leases such fact precludes the lease involved in this cause because of the fact that such prior right referred to will prevent appellee from using any part of the sixteenth section involved in the lease to him. In the case of *Fernwood Lumber Co.* v. *Rowley,* 110 Miss. 821, 71 So. 3, hereinbefore referred to, this court held that a sale of timber on a sixteenth section to a person not the lessee, at the time there was an outstanding agricultural

lease, was and is void and the principle there announced applies with equal force to the case at bar.

The facts and questions here involved readily show that appellee, upon his offer to lease, was, by the board of supervisors of Jackson county, granted a lease, executed by the president of such board, to the sixteenth section mentioned in the amended bill; that the lease was not executed by the superintendent of education of that county as required by statute; that the lease was granted and executed without obtaining the consent of the inhabitants entitled to determine whether such lands shall be leased; that no ground rent payable annually was required although the instrument executed purports to convey the said sixteenth section for a period of fifteen years, from and after the date thereof; that no lump sum, that would constitute a substantial consideration therefor, was required of appellee as a consideration for said lease; that chapter 351 of the Laws of 1918 apply solely to Jackson county wherefore same is a local or special law and therefore in violation of the Constitution; and that, prior to and at the time of the granting of said lease, there were outstanding leases of said section. In view of all of which it cannot be regarded that the chancellor committed the slightest error in overruling the demurrer to the amended bill herein.

The facts just recited render the lease to appellee entirely void. It vested no right whatever in appellee to go upon the said sixteenth section and there bore and drill for oil and gas. To do so would be an invasion of prior rights of other persons and the board of supervisors of Jackson county at the time of granting this lease, before and since that time, had no power whatever to lawfully authorize such an invasion.

The decree rendered herein should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

George W. Worth filed a bill in the chancery court alleging that he entered into a certain contract with the defendant, through the board of supervisors, in consideration

of one dollar paid by complainant to defendant for the lease of section 16, Township 6 south, Range 5 west, in said county, in which contract it was provided that the appellee, the complainant below, should have the exclusive right to drill for oil and gas on said section for a period of fifteen years, and said contract provided that the drilling and boring should be commenced within four months, and the complainant deposited with the defendant one thousand dollars Liberty Bonds which were alleged to have been then in the custody of the county. He averred further that he entered said contract in good faith, believing that the board of supervisors was empowered and authorized to make a valid contract, but that he is advised that the county is without right or power in the said premises and had no power to dispose of any of the rights in said section, especially that of boring and drilling for oil; that the only law authorizing said board to make such contract was chapter 351, Laws of 1918, which is alleged to be void for the reason that it is in violation of the Constitution of the state, to wit, sections 87 and 88 and paragraphs P and U of section 90, of the state Constitution.

It is also alleged that there were already leases of said sixteenth section referred to, said leases outstanding in one Jackson and one Hulbuert, and that thereby the law referred to by its terms did not authorize defendant to contract with the complainant.

It was further alleged that the consent of the inhabitants of the said township was not obtained for the leasing of said lands for said purposes, by reason of which the said contract was null and void. It is further averred that, the board not having acquired the consent of the inhabitants, and not advertising notice of their purpose to lease said lands, all of which was required in such cases, there was no valid, enforceable contract.

It further alleged that the complainant was a citizen of New York and ignorant of the laws of this state when he entered into said contract, and that he made the deposit in good faith, believing said contract was valid, and

prayed for a decree adjudging the said contract to be void and canceled; and that the Liberty Bonds deposited with the county be returned to the complainant, and for general relief.

The bill was demurred to by the county: First, on the ground that under chapter 129, Code of 1906, and the laws amendatory thereof, full jurisdiction and control of the sixteenth sections were delegated to the board of supervisors, and that neither the courts nor the law department of the state have power or authority to supervise or control the said board in the mode, manner, and terms upon which the oil and gas rights or privileges from said land should be sold; second, that chapter 351, Laws of 1918, is not such law as is prohibited by the provision of the Constitution against local and private laws, and that said act is not an act providing for the maintenance or support of any private or common school or granting such school any privilege within paragraph P of section 90 of the Constitution, and that it is not an act within the constitutional prohibition of paragraph U of section 90 granting any lands under the control of the state to any person or corporation; that the said contract is not void because the consent of the inhabitants of the township was not previously obtained therefor, or because the said contract was entered into without advertisement of the purpose of the board of supervisors therefor; that the bill shows on its face that the outstanding leases of section 16 were agricultural leases, and not oil or gas leases, and that it is not alleged that they were valid leases or that the consent of the lessees was not obtained for granting to complainant the privilege of drilling for oil and gas on said land; that it is shown by the contract made exhibit to the bill that the contract was in good faith, and that there was no concealment, deception, or fraud by the board of supervisors, and that the complainant was not prevented by the board from investigating and learning the facts and law governing the matter; that it is not shown in the bill that the complainant began drilling for oil or gas within six months,

as the said lease provided; and that the bonds became the property of the county.

Chapter 351, Laws of 1918, so far as pertinent to this suit, is contained in the provisions of section 1 of that act, which reads as follows:

"That the board of supervisors of Jackson county be and the same is hereby authorized and empowered to lease for oil and gas purposes for a term of not exceeding fifteen years, rent payable annually, any sixteenth section school lands, or other lands taken in lieu of sixteenth section reserved for the support of township schools, which are not at present leased."

It will be seen from the provisions of this act that the board of supervisors were not authorized to lease lands which had already been leased, and it will also be seen that this section requires rent to be paid annually. The contract was for a lease of fifteen years for the sum of one dollars plus one-eighth of whatever oil or gas might be found. The contract nowhere provided for an annual rent.

Section 4711 of the Code of 1906 (section 7522, Hemingway's Code) reads as follows:

"The consent of the inhabitants of a township to the leasing of the sixteenth section lands shall be obtained by the township trustees in the following manner: They shall give notice by posting in three or more public places in the township for at least five days, and call a meeting of the heads of families in the township, to be held at a conveniently located schoolhouse therein, on a Saturday to be named in the notice. On the day named the trustees shall attend, organize the meeting, and take the sense thereof as to whether the lands shall be leased for a term of years. Unless the inhabitants thus consent, the lands shall not be leased for a longer term than one year. The consent, or refusal of consent, shall be certified to the board of supervisors at its next or a subsequent meeting, by the trustees, under oath: and the certificate of the trustees shall be conclusive of the facts stated therein three months

after the adjournment of the meeting at which the certificate shall be spread upon the minutes of the board."

We think this section and chapter 351 are to be construed together. This section, requiring the consent of the inhabitants, applies in full force to contracts under chapter 351, Laws of 1918. The rule is well settled that all statutes *in pari materia* are to be considered together, and a new act does not repeal or modify an old one unless there is some inconsistency between them. The consent of the inhabitants is imposed upon such contracts to prevent improvident and ill-considered contracts being made by the board of supervisors. It would be immaterial which party initiated the proceedings for contract. The consent of the inhabitants must be procured in the manner prescribed by law, and, unless the inhabitants so consent, a lease for longer than one year is not valid.

This being true, the contract made by the board of supervisors with the complainant was unauthorized and void, and it will be unnecessary to deal with the constitutional principles brought into the case to dispose of this cause. The court will not decide a constitutional question unless necessary to the disposition of the cause. We call attention, however, that the bill does not allege that chapter 351, Laws of 1918, was not passed in conformity to the provisions of section 89 of the Constitution. By section 4716, Code of 1906 (section 7527, Hemingway's Code), it is provided that, if the lease was illegally made and void, then the court may have an account stated of the amount of money, principal and interest, which has actually been paid in consideration for such lease by the complainant and those under whom he may claim and an account of the rents, issues, and profits arising from said land, and may decree any excess money paid and interest and cost over the rents, issues, and profit, etc.

The contract being beyond the power of the board to make because not made in conformity with the law and because of outstanding leases, and the complainant having deposited the bonds with the county, and the county

having declared a forfeiture of the. bonds to the county for the failure to begin operations within the time stipulated in the contract, the ·court should decree and return the bonds to the complainant, unless the defendants shall take issue with the allegations of the bill by appropriate pleadings and be sustained by the proof.

The judgment will be affirmed, and the cause remanded.

*Affirmed and remanded.*